# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF GEORGIA
### ATLANTA DIVISION

| | |
|---|---|
| CITY OF ORLANDO POLICE OFFICERS' PENSION FUND, Individually and on Behalf of All Others Similarly Situated,<br><br>    Plaintiff,<br><br>  v.<br><br>MANHATTAN ASSOCIATES, INC., EDDIE CAPEL, and DENNIS B. STORY,<br><br>    Defendants. | Case No.<br><br>**COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS**<br><br>**CLASS ACTION**<br><br><u>Demand for Jury Trial</u> |

Plaintiff City of Orlando Police Officers' Pension Fund ("Plaintiff"), individually and on behalf of all others similarly situated, by its undersigned attorneys, alleges in this Complaint for violations of the federal securities laws (the "Complaint") the following based upon knowledge with respect to its own acts, and upon facts obtained through an investigation conducted by its counsel, which included, *inter alia*: (a) review and analysis of relevant filings made by Manhattan Associates, Inc. ("Manhattan Associates" or the "Company") with the United States Securities and Exchange Commission (the "SEC"); (b) review and analysis of Manhattan Associates' public documents, conference calls, press releases, and stock

1

chart; (c) review and analysis of securities analysts' reports and advisories concerning the Company; and (d) information readily obtainable on the internet.

Plaintiff believes that further substantial evidentiary support will exist for the allegations set forth herein after a reasonable opportunity for discovery. Most of the facts supporting the allegations contained herein are known only to the Defendants (as defined herein) or are exclusively within their control.

## NATURE OF THE ACTION

1.     This is a federal securities class action on behalf of all persons or entities that purchased or otherwise acquired Manhattan Associates securities between July 24, 2024 and February 7, 2025, inclusive (the "Class Period"), seeking to recover damages caused by Defendants' violations of the federal securities laws (the "Class"). The claims asserted herein are alleged against Manhattan Associates, Eddie Capel, who was, at all relevant times, the President and Chief Executive Officer ("CEO") of Manhattan Associates, and Dennis B. Story, who was, at all relevant times, the Executive Vice President, Chief Financial Officer ("CFO"), and Treasurer of Manhattan Associates (collectively "Defendants").

2.     Manhattan Associates is an Atlanta, Georgia based provider of software solutions designed to manage supply chains for retailers, wholesalers, manufacturers, logistics providers and other organizations. Manhattan Associates generates revenue through cloud-based software subscriptions, software licenses,

maintenance contracts, hardware sales, and related services. The Company's Services segment is a critical part of Manhattan Associates' business, accounting for more than 50% of the Company's 2024 full-year revenue. Such services include advising and assisting customers in planning and implementing Manhattan Associates' solutions.

3.     Manhattan Associates offers its software either *on-premise* (hosted locally on its customers' servers) or *on the cloud* (hosted remotely on third-party servers). During the Class Period, Manhattan Associates focused on moving many of its on-premise customers to cloud-based services because the Company generates higher revenues per user from its cloud-based software.

4.     During the Class Period, Defendants touted services as an ongoing strength for Manhattan Associates while claiming that cloud sales were fueling the growth of its services business. Defendants also made projections concerning Manhattan Associates' expected 2025 revenue while expressing confidence in the Company's ability to forecast guidance despite macroeconomic fluctuations.

5.     Such claims were materially false and misleading and/or failed to disclose material adverse facts about Manhattan Associates' business, operations, and prospects. Specifically, Defendants failed to disclose that: (i) customer delays and deferrals were resulting in a slowdown to the Company's services revenue growth; (ii) as customers switched from on-premise to cloud-based software, they

utilized fewer of Manhattan Associates' services; and (iii) as a result of the forgoing, Defendants' positive statements about Manhattan Associates' business, operations, and prospects were materially false and misleading and/or lacked reasonable basis.

6.     The truth began to emerge on January 28, 2025, when Manhattan Associates reported its fourth quarter and full-year 2024 financial results and announced reduced 2025 revenue guidance.  The Company attributed these results and lowered guidance largely to a decline in its service revenue.  On this news, Manhattan Associates' stock price dropped $72.26 per share, or 24.5 percent, to close at $222.84 per share on January 29, 2025.

7.     The truth was further revealed to the market on February 10, 2025, when the Company announced that its CEO, Eddie Capel, was retiring *that same week*.  On this news, the price of Manhattan Associates' stock price dropped another $23.20, or 11.5 percent, to close at $177.70 per share on February 10, 2025.

8.     As a result of Defendants' wrongful acts and omissions, and the precipitous decline in the market value of the Company's securities, Plaintiff and other Class members have suffered significant losses and damages.

## JURISDICTION AND VENUE

9.     The claims asserted herein arise under and pursuant to Sections 10(b) and 20(a) of the Exchange Act, 15 U.S.C. §§ 78j(b) and 78t(a), and Rule 10b-5 promulgated thereunder by the SEC, 17 C.F.R. § 240.10b-5.

10.    This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1331 and Section 27 of the Exchange Act.

11.    Venue is proper in this Judicial District pursuant to Section 27 of the Exchange Act (15 U.S.C. § 78aa) and 28 U.S.C. § 1391(b). Manhattan Associates is headquartered in this Judicial District, Defendants conduct business in this Judicial District, and a significant portion of Defendants' activities took place within this Judicial District.

12.    In connection with the acts, conduct and other wrongs alleged in this Complaint, Defendants, directly or indirectly, used the means and instrumentalities of interstate commerce, including but not limited to, the United States mail, interstate telephone communications and the facilities of the national securities exchange.

## THE PARTIES

13.    Plaintiff purchased Manhattan Associates securities at artificially inflated prices during the Class Period and was damaged upon the revelation of the Defendants' fraud. Plaintiff's certification evidencing its transaction in Manhattan Associates is attached hereto.

14.    Manhattan Associates, Inc. is a Georgia corporation with its principal executive offices located at 2300 Windy Ridge Parkway, 10th Floor, Atlanta, GA 30339. During the Class Period, the Company's common stock traded on the NASDAQ Stock Market (the "NASDAQ") under the symbol "MANH."

15.     Defendant Eddie Capel was, at all relevant times, the President, Chief Executive Officer, and Director on the Board of Manhattan Associates.

16.     Defendant Dennis B. Story was, at all relevant times, the Executive Vice President, Chief Financial Officer, and Treasurer of Manhattan Associates.

17.     Defendants Capel and Story are sometimes referred to herein as the "Individual Defendants."   Manhattan Associates together with the Individual Defendants are referred to herein as the "Defendants."

18.     The Individual Defendants, because of their positions with the Company, possessed the power and authority to control the contents of Manhattan Associates' reports to the SEC, press releases, and presentations to securities analysts, money and portfolio managers, and institutional investors, *i.e.*, the market. Each Individual Defendant was provided with copies of the Company's reports and press releases alleged herein to be misleading prior to, or shortly after, their issuance and had the ability and opportunity to prevent their issuance or cause them to be corrected.  Because of their positions and access to material non-public information available to them, each of these Individual Defendants knew that the adverse facts specified herein had not been disclosed to, and were being concealed from, the public, and that the positive representations which were being made were then materially false and/or misleading.  The Individual Defendants are liable for the false

statements pleaded herein, as those statements were each "group-published" information, the result of the collective actions of the Individual Defendants.

19.    Manhattan Associates is liable for the acts of the Individual Defendants, and its employees under the doctrine of *respondeat superior* and common law principles of agency as all the wrongful acts complained of herein were carried out within the scope of their employment with authorization.

20.    The scienter of the Individual Defendants, and other employees and agents of the Company are similarly imputed to Manhattan Associates under *respondeat superior* and agency principles.

## SUBSTANTIVE ALLEGATIONS

### Company Background

21.    Manhattan Associates is a global company that sells inventory management software and related services.  The Company offers its software either *on-premise* (hosted locally on its customers' servers) or *on the cloud* (hosted remotely on third-party servers).  During the Class Period, Manhattan Associates focused on transitioning its on-premise customers to the cloud.

22.    The Company offers services to its customers thorough its Professional Services Organization (the "Services Segment").  The Services Segment provides customers with supply chain and enterprise commerce domain expertise.  This includes industry-specific "best-practices" protocols and processes.  The Services

Segment assists customers in all phases of implementing the Company's systems, including planning and design, customer-specific module configuration, and on-site implementation.   The Services segment accounted for more than 50% of the Company's 2024 full-year revenue.

**Materially False and Misleading Statements Issued During the Class Period**

*July 23, 2024*

23.    On July 23, 2024, after the close of trading, Defendants issued a press release announcing Manhattan Associates' financial results for the second quarter of 2024.  During an earnings call Defendants conducted the same day, Defendant Capel touted the "***opportunities for growth of our internal services organization***."[1]

24.    On the same call, Defendant Story claimed that Manhattan Associates' "***performance was driven by strong cloud and services revenue growth combined with operating leverage as our cloud business continues to scale***."  Defendant Story also stated that Manhattan Associates' service revenue was "***in line with our expectations as cloud sales continue to fuel services revenue growth for Manhattan***."

*October 22, 2024*

25.    On October 22, 2024, the Company issued a press release announcing its financial results for the third quarter of 2024.  In that press release, Defendant

_____

[1] Emphasis added throughout unless otherwise noted.

Capel stated: "***Our fourth quarter is off to a solid start, and we are providing responsible 2025 parameters.***"

26.    During an earnings call the Defendants conducted the same day, Defendant Capel praised the Company's continued services revenue growth, despite the macroeconomic climate stating, in pertinent part:

> ***Driving the top-line outperformance and earnings leverage was solid cloud and services revenue growth across all geographies***, with cloud subscription revenue posting 33% growth in the quarter. ***The Manhattan's business fundamentals are solid, and we remain confident and very optimistic about our business opportunity. While the global macro environment remains challenging, demand for our solutions is robust***, customer satisfaction is high and as evidenced by our recent release of the Manhattan Active supply chain planning solution, the investments we're making in R&D and our people are creating a clear differentiation, delivering consistent market-leading innovation is creating more opportunities across supply chain, omnichannel retail and at the world's best -- as the world's best brands look to unify and digitally transform.
>
> . . .
>
> Our mission critical solutions help our clients improve customer satisfaction, drive more revenue and improve efficiency. ***And this strong demand for our solutions is also fueling opportunities and growth for our internal services organization and our systems integrator integration partners. In Q3, our global services team completed over 100 go-lives and continue to perform very well for our customers.***

27.    Defendant Story then presented the Company's full-year 2025 guidance:

Now moving to 2025. We're going to provide some preliminary parameters here. We are currently in the very early stages of our 2025 budget cycle, and we'll firm up this outlook on our Q4 call as we get through the U.S. election process and our final market analysis. With that, *we are targeting total revenue of $1.13 billion to $1.14 billion, representing 9% to 10% growth* with license and maintenance attrition masking total growth by 5 percentage points. This includes our cloud revenue target of $415 million, representing 23% year-over-year growth.

For RPO, we are targeting $2.15 billion, which represents 21% growth. *In 2025, we are targeting services revenue of $565 million to $575 million.* The $570 million midpoint represents 8% growth. On license and maintenance attrition to cloud, we are targeting maintenance revenue to be about $118 million, which represents a 15% decline and for license revenue to be about $5 million, which is well below 1% of total revenue. We anticipate operating margin to be about 33.5%. Normalizing for our license and maintenance revenue attrition to cloud, our 2025 operating margin increases roughly 100 bps year-over-year, while we simultaneously increased our investment in our business and hire leading supply chain talent. We expect our 2025 tax rate to be 21% and diluted share count to be approximately 63 million shares, which assumes no buyback activity.

In summary, our preliminary 2025 parameters include total revenue, excluding license and maintenance attrition to increase 14%, cloud revenue to increase 23%, services revenue to increase 8% and an RPO to increase 21% and for an operating margin of 33.5% while increasing our investment in Manhattan leading innovation. All-in, solid execution by our global Manhattan team and looking forward to the - ending the year strong.

28.     Defendant Capel summarized the Defendants' prepared remarks for the earnings call, highlighting their cautious and responsible approach to signaling full-year 2025 guidance and their optimism in achieving them:

> Well, we're pleased with our Q3 and our year-to-date results. ***While we continue to be appropriately cautious, I think, on the volatile macro conditions, and we did experience a more pronounced impact this quarter, as we said earlier, though. We're still very confident in achieving the high end of our RPO goals for 2024. Longer term, our business fundamentals, win rates and innovation strategies are really solid.***
>
> ***And accordingly, we're optimistic about expanding our opportunity and what we've provided what we consider to be, albeit preliminary but responsible targets for 2025***. So, we thank everybody for joining the call, and we thank our global team for all the great work that they do for our customers.

29.     The above statements in paragraphs 23 to 28 were false and/or materially misleading.  Defendants provided favorable forward looking guidance and touted the prospects for Manhattan Associates' service revenue while failing to disclose that: (i) customer delays and deferrals were resulting in a slowdown to the Company's services revenue growth; (ii) as customers switched from on-premise to cloud-based software, they utilized fewer of Manhattan Associates' services; and (iii) as a result of the forgoing, Defendants' positive statements about Manhattan Associates' business, operations, and prospects were materially false and misleading and/or lacked reasonable basis.

11

**The Truth Is Revealed to Investors**

30.     On January 28, 2025, after the close of trading, Defendants issued a press release announcing its fourth quarter and full-year 2024 financial results. On the same day, Manhattan Associates hosted an earnings call to discuss these results. During this call, Defendant Capel highlighted setbacks to the Company's guidance for the Services Segment and blamed this reduced guidance on headwinds caused by customers reducing their planned services work, stating in pertinent part:

> *Near-term headwinds for our services business have surfaced as about 10% of our customers with in-flight implementations reduced their planned services work for the upcoming calendar and fiscal year, and we've adjusted our outlook accordingly.*
>
> Now *services continues to be very important to Manhattan. Firstly, because that team ensures our customers' success; and secondly, it keeps us close to our customers. And these tight partnerships help us provide clarity on our customers' needs, which in turn incorporates - - allows us to incorporate that in our future waves of innovation, helping us drive future subscription growth*. Now in 2025, we'll have a record number of customer implementations, and those customers will continue to spend significantly on Manhattan services, albeit a little less than we had previously planned.
>
> So to summarize, *this shift in professional services work to future periods, some deal pushes that we highlighted throughout 2024, and to a lesser extent, reduced customization and higher partner utilization, will cause services revenue to trough in the first quarter of 2025*. With new service implementation projects steadily increasing throughout 2025, we anticipate solid sequential

services revenue growth in the middle of the year before returning to year-over-year growth in Q4.

31.    Defendant Story elaborated on Manhattan Associates' reduced full-year 2025 guidance, stating in relevant part:

> **For the full year 2025 guidance, we now expect total revenue of $1.06 billion to $1.07 billion. The $70 million difference from our preliminary parameters consists of $20 million of FX headwind, and as Eddie highlighted, a reduction in services revenue.**
>
> This will result in Q1 total revenue of $256 million to $258 million, and we are targeting total revenue of about $266.5 million in Q2, $273 million in Q3 and $269 million in Q4. For 2025 adjusted operating margin, we expect a range of 33% to 33.5%, and an FX in the range is unchanged from our prior parameters. On a quarterly basis, at the midpoint, adjusted operating margin is expected to be about 31% in Q1, 33.5% in Q2, 34.5% in Q3, and accounting for retail peak seasonality, 34% in Q4.
>
> . . .
>
> So here are some additional details on our 2025 outlook. For full year 2025, we expect cloud revenue of $405 million to $410 million. At the midpoint, this represents 21% growth and ex the FX, the midpoint is unchanged from our earlier parameters. On a quarterly basis, this assumes $93.5 million in Q1, $99.5 million in Q2 and $105 million in Q3 and $109.5 million in Q4.
>
> **For services, we now expect a range of $494 million to $500 million, and assume steady growth improvement throughout the year as new service projects ramp. On a quarterly basis, this assumes $117 million in Q1, $127.5 million in Q2, $130.5 million in Q3, and accounting for retail peak seasonality, $122 million in Q4.**

32.    During the question-and-answer portion of the call, Defendants were questioned about the poor results in services:

> <Q: Terrell Frederick Tillman – Truist Securities – Research Analyst> . . .
>
> Services, you're seeing some sluggishness -- What I'm curious about in services, and maybe it's too early to tell, but part of this is it's a whole different model with the cloud. And you have three-plus versions each year, and so there's new stuff coming out. And so I'm just curious where you think we are on cyclicality versus maybe structural dynamics with services going forward?
>
> . . .
>
> <A: Defendant Capel> Yes. There's no question that we are becoming much more efficient, implementing our software, that's having some impact. Being the now, I think unequivocal leader in the space, there were more and more particularly Tier 1 partners that are implementing our software. So that's having an impact as well. But ***there is no question, we've seen pressure on budgets. As our customers went into their budgeting cycle, call it, August, September, October of last year, they were more bullish, I think, about how much they wanted to get completed calendar year 2025.***
>
> And we've got, obviously, a whole cadre of fabulous Tier 1 companies that honestly are going to continue to implement our software during 2025 and spend significant services dollars with us, just not quite as much as the team - their teams are anticipating when they originally budgeted in the fall of last year. ***So I think they had their budgets pulled back a little bit, and that trickle down to us***.

33.    On this news, Manhattan Associates' stock price dropped $72.26 per share, or 24.5 percent, to close at $222.84 per share on January 29, 2025.

14

34.    The truth was further revealed on February 10, 2025 when the Company announced that Eddie Capel, the Company's CEO was retiring **that same week**.

35.    On this news, the price of Manhattan Associates' stock price dropped another $23.20, or 11.5 percent, to close at $177.70 per share on February 10, 2025.

## ADDITIONAL SCIENTER ALLEGATIONS

36.    During the Class Period, as alleged herein, the Individual Defendants acted with scienter in that the Individual Defendants knew or were reckless as to whether the public documents and statements issued or disseminated in the name of the Company during the Class Period were materially false and misleading; knew or were reckless as to whether such statements or documents would be issued or disseminated to the investing public; and knowingly and substantially participated or acquiesced in the issuance or dissemination of such statements or documents as primary violations of the federal securities laws.

37.    The Individual Defendants permitted Manhattan Associates to release these false and misleading statements and failed to file the necessary corrective disclosures, which artificially inflated the value of the Company's securities.

38.    As set forth herein, the Individual Defendants, by virtue of their receipt of information reflecting the true facts regarding Manhattan Associates, their control over, receipt, or modification of Manhattan Associates' allegedly materially

misleading statements and omissions, or their positions with the Company that made them privy to confidential information concerning Manhattan Associates, participated in the fraudulent scheme alleged herein.

39.    The Individual Defendants are liable as participants in a fraudulent scheme and course of conduct that operated as a fraud or deceit on purchasers of Manhattan Associates securities by disseminating materially false and misleading statements or concealing material adverse facts.  The scheme deceived the investing public regarding Manhattan Associates' business, operations, and management and the intrinsic value of Manhattan Associates securities and caused Plaintiff and members of the Class to purchase Manhattan Associates securities at artificially inflated prices.

## LOSS CAUSATION/ECONOMIC LOSS

40.    During the Class Period, as detailed herein, Manhattan Associates and the Individual Defendants made false and misleading statements and engaged in a scheme to deceive the market and a course of conduct that artificially inflated the prices of Manhattan Associates securities and operated as a fraud or deceit on Class Period purchasers of Manhattan Associates securities by misrepresenting the Company's business and prospects.    Later, when Defendants' prior misrepresentations and fraudulent conduct became known to the market, the price of Manhattan Associates securities declined as the prior artificial inflation came out

of the price over time.  As a result of their purchases of Manhattan Associates securities during the Class Period, Plaintiff and other members of the Class suffered economic loss, *i.e.*, damages, under the federal securities laws.

## APPLICABILITY OF PRESUMPTION OF RELIANCE: FRAUD ON THE MARKET

41.    Plaintiff will rely upon the presumption of reliance established by the fraud-on-the-market doctrine in that, among other things:

(a)    Defendants made public misrepresentations or failed to disclose material facts during the Class Period;

(b)    the omissions and misrepresentations were material;

(c)    the Company's securities traded in an efficient market;

(d)    the misrepresentations alleged would tend to induce a reasonable investor to misjudge the value of the Company's securities; and

(e)    Plaintiff and other members of the Class purchased Manhattan Associates securities between the time Defendants misrepresented or failed to disclose material facts and the time the true facts were disclosed, without knowledge of the misrepresented or omitted facts.

42.    At all relevant times, the market for Manhattan Associates securities was efficient for the following reasons, among others:

(a)  as a regulated issuer, Manhattan Associates filed periodic public reports with the SEC;

(b)  Manhattan Associates regularly communicated with public investors via established market communication mechanisms, including through regular disseminations of press releases on the major newswire services and through other wide-ranging public disclosures, such as communications with the financial press, securities analysts, and other similar reporting services;

(c)  Manhattan Associates was followed by numerous securities analysts employed by a major brokerage firm(s) who wrote reports that were distributed to the sales force and certain customers of their respective brokerage firm(s) and that were publicly available and entered the public marketplace; and

(d)  Manhattan Associates stock was actively traded in an efficient market, the NASDAQ, under the ticker symbol "MANH."

43.    As a result of the foregoing, the market for Manhattan Associates securities promptly digested current information regarding Manhattan Associates from publicly available sources and reflected such information in Manhattan Associates' securities prices.   Under these circumstances, all purchasers of Manhattan Associates securities during the Class Period suffered similar injury

18

through their purchase of Manhattan Associates securities at artificially inflated prices and the presumption of reliance applies.

44.    Further, to the extent that the Defendants concealed or improperly failed to disclose material facts with regard to the Company, Plaintiff and the Class are entitled to a presumption of reliance in accordance with *Affiliated Ute Citizens of Utah v. United States*, 406 U.S. 128, 153 (1972).

## NO SAFE HARBOR

45.    The statutory safe harbor provided for forward-looking statements under certain circumstances does not apply to any of the allegedly false statements pleaded in this Complaint.  The statements alleged to be false and misleading herein all relate to then-existing facts and conditions.  In addition, to the extent certain of the statements alleged to be false may be characterized as forward looking, they were not identified as "forward-looking statements" when made and there were no meaningful cautionary statements identifying important factors that could cause actual results to differ materially from those in the purportedly forward-looking statements.   In the alternative, to the extent that the statutory safe harbor is determined to apply to any forward-looking statements pleaded herein, Defendants are liable for those false forward-looking statements because at the time each of those forward-looking statements were made, the speaker had actual knowledge that the forward-looking statement was materially false or misleading, or the forward-

looking statement was authorized or approved by an executive officer of Manhattan Associates who knew that the statement was false when made.

## CLASS ACTION ALLEGATIONS

46.    Plaintiff brings this action as a class action pursuant to Federal Rule of Civil Procedure 23(a) and (b)(3) on behalf of a Class, consisting of all those who purchased or otherwise acquired Manhattan Associates securities during the Class Period and were damaged upon the revelation of the alleged corrective disclosure. Excluded from the Class are Defendants, the officers and directors of the Company at all relevant times, members of their immediate families and their legal representatives, heirs, successors or assigns, and any entity in which Defendants have or had a controlling interest.

47.    The members of the Class are so numerous that joinder is impracticable. Manhattan Associates common stock is actively traded on the NASDAQ. While the exact number of Class members is unknown to Plaintiff at this time and can only be ascertained through discovery, Plaintiff believes there are hundreds, if not thousands, of members in the Class. Record owners and other Class members may be identified from records procured from or maintained by the Company or its transfer agent and may be notified of the pendency of this action using a form of notice similar to that customarily used in securities class actions.

48.    Plaintiff's claims are typical of the claims of the members of the Class as all members of the Class are similarly affected by Defendants' wrongful conduct in violation of federal law that is complained of herein.

49.    Plaintiff will fairly and adequately protect the interests of the members of the Class and has retained counsel competent and experienced in class and securities litigation.  Plaintiff has no interests antagonistic to or in conflict with those of the Class.

50.    Common questions of law and fact exist as to all Class members and predominate over any questions solely affecting individual Class members, including:

    (a)    whether the federal securities laws were violated by Defendants' acts as alleged herein;

    (b)    whether statements made by Defendants to the investing public during the Class Period misrepresented material facts about the business, operations and management of Manhattan Associates;

    (c)    whether the Individual Defendants caused Manhattan Associates to issue false and misleading financial statements during the Class Period;

    (d)    whether Defendants acted knowingly or recklessly in issuing false and misleading financial statements;

(e)     whether the prices of Manhattan Associates securities during the

Class Period were artificially inflated because of the Defendants'

conduct complained of herein; and

(f)     whether the members of the Class have sustained damages and,

if so, what is the proper measure of damages.

51.     A class action is superior to other available methods for the fair and

efficient adjudication of this controversy.   Because the damages suffered by

individual Class members may be relatively small, the expense and burden of

individual litigation make it exceedingly difficult, if not impossible and

impracticable, for Class members to individually redress the wrongs alleged.  There

will be no difficulty in managing this action as a class action.

## COUNT I

### For Violation of Section 10(b) of the Exchange Act and Rule 10b-5 Against Manhattan Associates and the Individual Defendants

52.     Plaintiff repeats and reallege each and every allegation contained in the

foregoing paragraphs as if fully set forth herein.

53.     During the Class Period, the Defendants disseminated or approved the

false statements specified above, which they knew or recklessly disregarded were

misleading in that they contained misrepresentations and failed to disclose material

facts necessary in order to make the statements made, in light of the circumstances

under which they were made, not misleading.

22

54.    Defendants violated Section 10(b) of the Exchange Act and Rule 10b-5 in that they:

(a)    Employed devices, schemes, and artifices to defraud;

(b)    Made untrue statements of material facts and/or omitted to state material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; or

(c)    Engaged in acts, practices, and a course of business that operated as a fraud or deceit upon Plaintiff and others similarly situated in connection with their purchases of Manhattan Associates securities during the Class Period.

55.    Plaintiff and Class members have suffered damages in that, in reliance on the integrity of the market, they paid artificially inflated prices for Manhattan Associates securities.  Plaintiff and Class members would not have purchased Manhattan Associates securities at the prices they paid, or at all, if they had been aware that the market prices had been artificially and falsely inflated by Defendants' misleading statements.

56.    As a direct and proximate result of Defendants' wrongful conduct, Plaintiff and the other members of the Class suffered damages in connection with their purchases of Manhattan Associates securities during the Class Period.

## COUNT II

## For Violation of Section 20(a) of the Exchange Act Against the Individual Defendants

57.    Plaintiff repeats and realleges the allegations contained in ¶¶ 1-51 as if fully set forth herein.

58.    The Individual Defendants acted as controlling persons of Manhattan Associates within the meaning of Section 20(a) of the Exchange Act.  By virtue of their positions and their power to control the actions of Manhattan Associates and its employees.  By reason of such conduct, the Individual Defendants are liable pursuant to Section 20(a) of the Exchange Act.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff, individually and on behalf of the proposed Class, respectfully pray for judgment against Defendants as follows:

(A)    Determining that this action is a proper class action, designating Plaintiff as Lead Plaintiff and certifying Plaintiff as a class representative under Rule 23 of the Federal Rules of Civil Procedure and Plaintiff's counsel as Lead Counsel;

(B)    Awarding Plaintiff and the Class compensatory damages against all Defendants, jointly and severally, for all damages sustained as a result of defendants' wrongdoing, in an amount to be proven at trial, together with pre-judgment interest thereon;

(C)    Awarding Plaintiff and the Class their reasonable costs and expenses incurred in this action, including, but not limited to, attorneys' fees and costs incurred by consulting and testifying expert witnesses; and

(D)    Granting such other, further, and/or different relief as the Court deems just and proper.

## DEMAND FOR TRIAL BY JURY

Plaintiff hereby demands a trial by jury on all issues so triable.

Dated: April 15, 2025                    Respectfully submitted,

                                         **COUNCILL, GUNNEMANN &
                                         CHALLY, LLC**

                                         *s/ Jonathan R. Chally*
                                         Jonathan R. Chally
                                         Georgia Bar No. 141392
                                         jchally@cgc-law.com
                                         Katherine L. D'Ambrosio
                                         Georgia Bar No. 780128
                                         kdambrosio@cgc-law.com
                                         75 14th Street, NE, Suite 2475
                                         Atlanta, Georgia 30309
                                         Telephone: (404) 407-5250
                                         Facsimile: (404) 600-1624

                                         *Liaison Counsel for Plaintiff*

                                         **LABATON KELLER SUCHAROW
                                         LLP**

Francis P. McConville (*pro hac vice forthcoming*)
fmcconville@labaton.com
Guillaume Buell (*pro hac vice forthcoming*)
gbuell@labaton.com
Connor C. Boehme (*pro hac vice forthcoming*)
cboehme@labaton.com
140 Broadway
New York, New York 10005
Telephone: (212) 907-0700
Facsimile: (212) 818-0477

*Attorneys for Plaintiff*

**KLAUSNER, KAUFMAN, JENSEN & LEVINSON**

Robert D. Klausner (*pro hac vice forthcoming*)
bob@robertdklausner.com
Stuart Kaufman (*pro hac vice forthcoming*)
stu@robertdklausner.com
7080 Northwest 4th Street
Plantation, Florida 33317
Telephone: (954) 916-1202

*Additional Counsel for Plaintiff*

## CERTIFICATE OF COMPLIANCE

I hereby certify that the foregoing has been prepared in accordance with the font type and margin requirements of LR 5.1, using font type of Times New Roman and 14-point font.

Dated: April 15, 2025

<div style="margin-left:50%">

*s/ Jonathan R. Chally*
Jonathan R. Chally
Georgia Bar No. 141392
jchally@cgc-law.com

*Liaison Counsel for Plaintiff*

</div>

## CERTIFICATION

I, Jay Smith, as Chairman of City of Orlando Police Officers' Pension Fund ("Orlando Police"), hereby certify as follows:

1.      I am fully authorized to enter into and execute this Certification on behalf of Orlando Police.  I have reviewed a complaint prepared against Manhattan Associates, Inc. ("Manhattan Associates") alleging violations of the federal securities laws and authorize the filing of this pleading;

2.      Orlando Police did not purchase securities of Manhattan Associates at the direction of counsel or in order to participate in any private action under the federal securities laws;

3.      Orlando Police is willing to serve as a lead plaintiff and representative party in this matter, including providing testimony at deposition and trial, if necessary.  Orlando Police fully understands the duties and responsibilities of the lead plaintiff under the Private Securities Litigation Reform Act, including the selection and retention of counsel and overseeing the prosecution of the action for the Class;

4.      Orlando Police's transactions in Manhattan Associates securities during the Class Period are reflected in Exhibit A, attached hereto;

5.      Orlando Police sought to serve as a lead plaintiff or representative party in the following class actions filed under the federal securities laws during the last three years:

*In re Vertiv Holdings Co. Securities Litigation*, No. 1:22-cv-03572 (S.D.N.Y.)
*City of Orlando Police Officers Pension Fund v. Five Below, Inc.*, No. 2:24-cv-4905 (E.D. Pa.)

6.      Beyond its pro rata share of any recovery, Orlando Police will not accept payment for serving as a lead plaintiff and representative party on behalf of the Class, except the reimbursement of such reasonable costs and expenses (including lost wages) as ordered or approved by the Court.

I declare under penalty of perjury, under the laws of the United States, that the foregoing is true and correct this $12$ day of April, 2025.

Jay Smith
Chairman
City of Orlando Police Officers' Pension Fund

**EXHIBIT A**

**TRANSACTIONS IN MANHATTAN ASSOCIATES, INC. COMMON STOCK**

| Transaction Type | Trade Date | Shares | Share Price | Cost/Proceeds |
|------------------|------------|--------|-------------|---------------|
| Purchases | 08/19/2024 | 139 | $258.3944 | ($35,916.82) |
| Purchases | 08/20/2024 | 351 | $256.8314 | ($90,147.82) |
| Purchases | 08/21/2024 | 211 | $260.3408 | ($54,931.91) |
| Purchases | 08/22/2024 | 428 | $261.1980 | ($111,792.74) |
| Purchases | 08/23/2024 | 448 | $262.2134 | ($117,471.60) |
| Purchases | 08/26/2024 | 211 | $262.2149 | ($55,327.34) |
| Purchases | 08/27/2024 | 120 | $260.8192 | ($31,298.30) |
| Purchases | 08/28/2024 | 284 | $259.5726 | ($73,718.62) |
| Purchases | 08/29/2024 | 223 | $264.1279 | ($58,900.52) |
| Purchases | 08/30/2024 | 324 | $264.5268 | ($85,706.68) |
| Purchases | 09/03/2024 | 268 | $258.5154 | ($69,282.13) |
| Purchases | 09/04/2024 | 160 | $257.4500 | ($41,192.00) |
| Purchases | 09/04/2024 | 258 | $256.5675 | ($66,194.42) |
| Purchases | 09/05/2024 | 223 | $252.5696 | ($56,323.02) |
| Purchases | 09/06/2024 | 241 | $251.0104 | ($60,493.51) |
| Purchases | 09/06/2024 | 56 | $250.8600 | ($14,048.16) |
| Purchases | 10/24/2024 | 399 | $273.2048 | ($109,008.72) |
| Purchases | 10/24/2024 | 33 | $272.7370 | ($9,000.32) |
| Purchases | 10/25/2024 | 68 | $275.9925 | ($18,767.49) |